UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HENRY KEMP,

      Plaintiff,

    v.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

      Defendant.

_____/

C-09-4687 PJH

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the court is defendant's motion for judgment on the pleadings. Having read the parties' papers and carefully considered their arguments and relevant legal authority, the court GRANTS the motion.

**BACKGROUND**

Pro se plaintiff Henry Kemp ("Kemp") frequents the medical library at the University of California, San Francisco ("UCSF"). Kemp alleges that on May 3, 2007, after he complained to library staff about noisy patrons, the head clerk, Andres Panado, summoned the UCSF police, who immediately ordered Kemp to leave the library. Once outside, he was arrested. He asserts that the police had no probable cause to arrest him, and also alleges that they used excessive force to effectuate the arrest.

On May 29, 2007, the San Francisco Superior Court imposed a stay-away order, directing Kemp to refrain from entering the UCSF medical library premises. On June

29, 2007, the court vacated the order and dismissed the charges pending against Kemp. However, the San Francisco District Attorney's office apparently failed to remove the stay-away order from the computerized Community Law Enforcement Telecommunications System ("CLETS").

In August 2007, Kemp informed Officer Yee of the USCF police that he intended to resume visits to the library. According to Kemp, Officer Yee noted that the stay-away order remained in the CLETS, but assured Kemp that UCSF police liaison would "take care of the matter."

On October 1, 2007, Kemp returned to the UCSF library. He alleges that UCSF police officers told him to leave and sit outside, and that he was then arrested for trespass and violation of the former stay-away order. He was transported to jail, where he was held until "an order from the lieutenant was received countermanding the initial order to arrest."

Kemp alleges that the officers had no probable cause to arrest him, and that they improperly relied on "old stale paper copies" of the stay-away order, rather than consulting the CLETS, which would have shown that he was not subject to a stay-away order.

Kemp also asserts that "it is manifestly obvious" – "by his appearance . . . and known noise intolerance and obvious homelessness" – that he is emotionally and mentally handicapped and disabled within the meaning of the Americans With Disabilities Act ("ADA"). He alleges that the UCSF police and medical library staff discriminated against him and failed to make a reasonable accommodation for his disability.

On October 8, 2008, Kemp filed suit in the San Francisco Superior Court, against the Regents of the University of California ("the Regents"), the Chancellor of UCSF, and the Police Department of UCSF, alleging violation of civil rights, in connection with the two arrests. On May 17, 2010, the Superior Court granted defendants' unopposed motion for judgment on the pleadings.

On October 1, 2009, Kemp filed the present action against the Regents, alleging claims of First and Fourth Amendment constitutional violations under 42 U.S.C. § 1983, and a claim under the ADA, 42 U.S.C. § 12101, et seq.  He seeks compensatory and punitive damages, and also seeks an order directing UCSF medical library staff to "reasonably assist patrons with noise makers and other violations of the Medical Library's own rules."

The Regents now seek judgment on the pleadings.

## DISCUSSION

A.   Legal Standard

A motion for judgment on the pleadings pursuant to Rule 12(c) "challenges the legal sufficiency of the opposing party's pleadings."  William Schwarzer et al, Federal Civil Procedure Before Trial ¶ 9:316 (2010); Fed. R. Civ. P 12(c).  The legal standards governing Rules 12(c) and 12(b)(6) are "functionally identical," Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989), as both permit challenges directed at the legal sufficiency of the parties' allegations.  Thus, a judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law.  Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1301 n.2 (9th Cir. 1992); see also Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

Articulating the standard for a Rule 12(b)(6) motion to dismiss, the Supreme Court noted that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  Indeed, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. at 544, 555 (2007) (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

The standard articulated in Twombly and Iqbal applies equally to a motion for judgment on the pleadings. Lowden v. T-Mobile USA, Inc., 2010 WL 1841891 at *1 (9th Cir. 2010) ("To survive a Federal Rule of Civil Procedure 12(c) motion, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'") (quoting Twombly, 550 U.S. at 544).

Because motions for judgment on the pleadings under Rule 12(c) and motions to dismiss for failure to state a claim under Rule 12(b)(6) are "functionally identical," Dworkin, 867 F.2d at 1192, leave to amend should be granted unless amendment would be futile. See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990).

B.   Defendant's Motion

The Regents argue (1) that the § 1983 claims arising from the May 1, 2007 arrest are barred by the statute of limitations, (2) that Eleventh Amendment immunity precludes both § 1983 claims, and (3) that the ADA cause of action is both time-barred and inadequately pled.

1.   Timeliness of the § 1983 claims from May 3, 2007

The Regents contend that the § 1983 claims arising from the May 3, 2007 arrest are time-barred. In opposition, Kemp contends that his entire claim accrued only after his second arrest on October 1, 2007, when he allegedly first realized he had suffered an "actionable wrong." He also argues that the "continuing violation" and "equitable tolling" doctrines rescue his claim from the statute of limitations.

The motion for judgment on the pleadings for the § 1983 claims based on the first arrest is GRANTED. The appropriate limitations period for a § 1983 claim is the forum state's statute of limitations for personal injury torts. See Wilson v. Garcia, 471 U.S. 261, 276 (1985); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). In California, this period is two years. Cal. Civ. Proc. Code § 335.1. The complaint in this action was filed on October 1, 2009, which is more than two years after the May 3, 2007 arrest.

4

Kemp's belief that his claim accrued only when he became aware that he had a legally actionable wrong is misguided and unsupported by case law.  Under federal law, which determines when a § 1983 cause of action accrues, see Wallace v. Kato, 549 U.S. 384, 388 (2007), a claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." See TwoRivers v. Lewis, 174 F.3d 987, 991-92 (9th Cir. 1999); Trotter v. Int'l Longshoremen's & Warehousemen's Union, 704 F.2d 1141, 1143 (9th Cir. 1983).

Thus, the appropriate inquiry is whether Kemp knew or should have known of the "critical facts" of the injury which are "that he has been hurt and who has inflicted the injury." See United States v. Kubrick, 444 U.S. 111, 122 (1979). Kemp does not contest that he was aware of these relevant facts on the day of his first arrest. Accordingly, the statute of limitations began to run at the time that Kemp was detained pursuant to legal process. Wallace, 549 U.S. at 389-90.

Nor does the continuing violations doctrine apply in this case, because Kemp alleges discrete acts occurring outside the limitations period.  Such acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002). Morgan was a case alleging claims under Title VII of the Civil Rights Act of 1964. However, the Ninth Circuit has since applied this reasoning to § 1983 claims. See Carpenteria Valley Farms v. Santa Barbara, 344 F.3d 822, 829 (9th Cir. 2003).[1]

Finally, the facts as pled do not establish a basis to equitably toll the limitations period.  Though federal law governs the accrual of the claim, a federal court must give effect to a state's tolling provisions. See Hardin v. Straub, 490 U.S. 536, 543-44 (1989). Under California law, equitable tolling of the limitation period is appropriate when an

---

[1] In addition, Kemp alleges no facts to support a claim under a "policy and practice" theory of discrimination. See Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002); Douglas v. California Dep't of Youth Authority, 271 F.3d 812, 822-23 (9th Cir. 2001).

earlier suit was filed and where the record shows "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct." Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137-38 (9th Cir. 2001) (en banc) (citing Collier v. City of Pasadena, 142 Cal. App. 3d 917, 934 n.5 (1983)).

The present case satisfies the first two prongs of the test but not the third. Like the instant claims, Kemp's state court complaint named the Regents and alleged similar "violations of civil rights" based on "false arrest," thus giving the Regents timely notice. Nor do the Regents need to gather additional evidence in order to defend the federal claim, especially since the Regents will have to prepare a closely-related defense for the claims arising from the second arrest.

The court cannot assume, however, that there was a good faith basis for waiting a year between filing a state complaint and a nearly identical federal complaint, and Kemp has not alleged any basis which might demonstrate his good faith. Accordingly, the Regents' motion for judgment on the pleadings is GRANTED. LEAVE TO AMEND is granted as well if Kemp can allege a factual basis supporting equitable tolling. In addition, as the § 1983 claim cannot proceed against the Regents for the reasons indicated below, any amended claim relating to the May 5, 2007 arrest may only be asserted against individual defendants.

2. Eleventh Amendment – Sovereign Immunity

Defendant argues that Kemp's First and Fourth Amendment claims must be dismissed because the Regents is "an arm of the state" that cannot be sued under §1983. In response, Kemp asserts that the State of California consented to being sued, thus waiving Eleventh Amendment protection. Alternatively, Kemp asks for leave to amend the complaint so as to include proper subjects of a § 1983 suit including "persons on the staff of the UCSF police and library."

The motion is GRANTED. The Eleventh Amendment bars from federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects

of any foreign state. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 237-38 (1985). This immunity also extends to suits against state agencies, including the Regents. Armstrong v. Meyers, 964 F.2d 948, 949-950 (9th Cir. 1992). Thus, the Regents cannot be considered a "person" who can be sued under § 1983. Id.

    Contrary to Kemp's assertions, California did not consent to being sued. As the Regents correctly note, the only case to which Kemp analogizes involves a claim brought under California law, not § 1983. Though a state may expressly waive its Eleventh Amendment immunity, it may not do so constructively. College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 686-87 (1999). Given this stringent requirement, "a state does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." Stanley v. Trustees of California State University, 433 F.3d 1129, 1133 (9th Cir. 2006).

    Nevertheless, even where a state is immune from suit under the Eleventh Amendment, a plaintiff may seek prospective injunctive relief from official state actors acting in their official capacities. Ex Parte Young, 209 U.S. 123, 159-60 (1908). Accordingly, the dismissal is with LEAVE TO AMEND to assert a § 1983 claim against individual defendants in their official capacities. Should Kemp amend his complaint to add defendants in their official capacities, he must also articulate what prospective injunctive relief he seeks.

    Kemp may also assert the § 1983 claim against individual defendants in their individual or personal capacities. In contrast to official-capacity suits, which "generally represent only another way of pleading an action against an entity of which an officer is an agent," Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978), personal- or individual-capacity suits seek to impose personal liability on a government official for actions he takes under color of state law. Any such claims must show that the individual officer or librarian caused the deprivation of a federal right. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); see also Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002).

The court notes, however, that any such claims asserted against UCSF police officers and librarians in their individual capacities may also be subject to dismissal as time-barred, if Kemp is unable to show that the claims relate back to the date of filing the original complaint. Under Federal Rule of Civil Procedure 15(c), an amendment adding a new defendant will relate back to the date of the original complaint if, within the period provided by Federal Rule of Civil Procedure 4(m) for serving the summons and complaint, the defendant to be brought in "received such notice of the action that it will not be prejudiced in defending on the merits," and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

The primary consideration under Federal Rule of Civil Procedure 15(c) is "what the party to be added knew or should have known, not the amending party's knowledge or its timeliness in seeking to amend the pleadings." Krupski v. Costa Crociere S.p.A., __ U.S.__, 2010 WL 2243705 at *3 (June 7, 2010). A plaintiff's knowledge and post-filing conduct is relevant only to the extent it "informs the prospective defendant's understanding of whether the plaintiff initially made a mistake concerning the proper party's identity." Id. at *10 (internal quotations omitted).[2]

3. ADA claim

Kemp initially claimed to be "emotionally and mentally handicapped and disabled within the parameters . . . of the ADA." As such, he felt that UCSF police and library staff were "legally obligated" to accommodate his "reasonable disability related requests such as enforcing their own posted anti-noise regulations." The court interprets this claim of denial of access to the services of a public facility as a claim under Title II of the ADA.

---

[2] And even if Kemp is able to show that the claims against any individual defendants relate back to the date of filing the original complaint, he will still have to show that the running of the statute should be tolled as to the claims based on the May 3, 2007 arrest.

8

Defendant argues that this claim, too, is time-barred and insufficiently pled to satisfy Federal Rule of Civil Procedure 8. According to defendant, Kemp failed to allege two critical facts: (1) that he suffered from a disabling condition covered by the ADA or (2) that he suffered discrimination because of his alleged disability.

The ADA does not contain its own limitations period. Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137 n.2 (9th Cir. 2002). Where federal statutes do not contain their own limitations periods, federal courts apply the most appropriate or analogous state statute of limitations. See Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987); see also Pickern, 293 F.3d at 1137 n.2.

A number of federal district courts in California have ruled that California's two-year statute of limitations for personal injury actions applies to federal disability claims brought in California. Pickern, 293 F.3d at 1137 n.2. Some district courts, however, have found the ADA to be more analogous to California's Unruh Civil Rights Act than to a personal injury action. See K.S. v. Fremont Unified Sch. Dist., 2007 WL 915399 at *3 (N.D. Cal., Mar. 23, 2007); Kramer v. Regents of Univ. of Calif., 81 F.Supp. 2d 972, 973 (N.D. Cal. 1999); see also Goldman v. Standard Ins. Co., 341 F.3d 1023, 1029-32 (9th Cir. 2003) (discussing similarities between the Unruh Act and the ADA).

Title II of the ADA prohibits any "public entity" from discriminating against any "qualified individual with a disability," by denying such individual "the benefits of the services, programs, or activities" of the public entity. 42 U.S.C. § 12132. The term "public entity" means, among other things, "any State or local government." 42 U.S.C. § 12131. For purposes of the claim asserted here, the state law statutory equivalent of ADA Title II appears to be California Civil Code § 54.1, the Disabled Persons Act. [3]

---

[3] The Disabled Persons Act provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, . . . to places of public accommodation, amusement, or resort, and other places to which the general public is invited . . . ." Cal. Civ. Code § 54.1.

By contrast, the Unruh Civil Rights Act prohibits denial of equal accommodations

9

However, like the ADA, neither the Unruh Act nor the Disabled Persons Act includes a statute of limitations. The Ninth Circuit has not yet formally decided which limitation period applies to Unruh Act claims. See Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 501 n.11 (9th Cir. 1993) (stating in dicta that the three-year statute of limitations for state statutory claims (Civil Code § 338) would apply to Unruh Act claims); see Pickern, 293 F.3d at 1137 n.2 (assuming, without deciding, that personal injury statute of limitations would apply).

There is no California Supreme Court authority on point. In West Shield Investigations and Sec. Consultants v. Superior Court, 82 Cal. App. 4th 935, 951-54 (2000), a case involving claims of interference with civil rights (Civil Code § 52.1) and sexual harassment (Civil Code § 51.9), which the court referred to generally as claims under the Unruh Civil Rights Act, "Civil Code § 51, et seq.," the California Court of Appeal (6th District) found that because the general policy embodied in Civil Code § 51 can be traced to early common law doctrine, the statute of limitations for liability created by statute (Civil Code § 338) was not applicable. West Shield, 82 Cal. App. 4th at 951-53.

In Gatto v. County of Sonoma, 98 Cal. App. 4th 744 (2002), the California Court of Appeal (1st District) criticized the West Shield court for combining Civil Code § 51 and the other adjacent sections of the Civil Code under the general rubric "Unruh Civil Rights Act," noting that "[b]y its own terms, the Unruh Civil Rights Act comprises only section 51." Gatto, 98 Cal. App. 4th at 757; see also Hughes v. Fair, 46 Cal. 4th 1035, 1044 n.1 (2009) (Civil Code § 51 is "the only statute comprising the Unruh Civil Rights Act"). Thus, Gatto asserted, West Shield erred when it characterized the claims under Civil Code § 52.1 and § 51.9 as "Unruh Act" claims. Gatto, 98 Cal. App. 4th at

---

by "business establishments." Cal. Civ. Code § 51(b). Title III of the ADA prohibits discrimination in public accommodations, 42 U.S.C. § 12182, but defines "public accommodation" as including "a museum, library, gallery, or other place of public display or collection," if the operation of such entity "affect[s] commerce." 42 U.S.C. § 12181(7)(H).

10

758-59.

The court emphasized that while the right protected under the actual Unruh Act (§ 51) – the right to be treated in a nondiscriminatory manner by places of public accommodation – existed at common law, the rights created by the other adjacent sections of the Civil Code did not necessarily exist at common law. Id. The Gatto court held that the personal injury statute of limitations should apply to causes of action under provisions that have evolved from the common law, but that the three-year statute (Civil Code § 338) should apply to others.

Thus, the court asserted, while claims under ADA Title III (nondiscrimination by places of public accommodation) can be analogized to the Unruh Act as having been derived from common law, and would thus be best subject to the personal injury statute of limitations, claims under ADA Title II (nondiscrimination in provision of services by public entities) do not derive from common law. Id. at 759; see also Brandenberg v. Eureka Redev. Agency, 152 Cal. App. 4th 1350, 1361 (2007) ("it has been the law for more than 50 years that the determination of whether liability is created by statute requires an analysis of whether the liability or duty existed at common law").

The court noted that the case before it presented only the question of the proper statute of limitations under Civil Code §§ 51(b) and 52.1, and that since both claims derived from the common law, the (then) one-year personal injury statute of limitations would apply. Gatto, 98 Cal. App. 4th at 759-60.

In the absence of any definitive ruling from the Ninth Circuit or the California Supreme Court, and given the California Court of Appeal's analysis in Gatto, the court finds that California's three-year statute of limitations for statutory violations should apply to plaintiff's claim under Title II of the ADA.

Nevertheless, the allegations of the complaint fail to state a cognizable ADA claim. To properly state a claim under ADA Title II, Kemp must allege facts showing (1) he "is an individual with a disability; (2) . . . [he] is otherwise qualified to receive . . . the benefit of" the library usage; (3) he was "denied these benefits . . . or was otherwise

discriminated against" and (4) "such exclusion . . . was by reason of [his] disability." See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). As the Regents note, the complaint fails to articulate a cognizable disability or to allege that the discrimination was "by reason of" the alleged disability.

The ADA defines the term "disability" to include "a physical or mental impairment that substantially limits one or more of the major life activities of the person." 42 U.S.C. § 12102(1). At the time of the events alleged in the complaint, the ADA did not define the term "major life activity."[4] Kemp refers to his "nervous disposition," "known noise intolerance," and "obvious homelessness," as somehow demonstrating that he is "emotionally and mentally handicapped and disabled" within the meaning of the ADA. However, the complaint pleads no facts showing any substantial impairment of a major life activity.

Kemp has also failed to allege that he was discriminated against because of his purported disability. Indeed, Kemp seems to contend that he was arrested the second time because of the vacated stay away order. He also claims, however, that the police realized the order had been vacated but "purposefully and punitively decided to use" the stale order. Leave to amend will be permitted so that Kemp may articulate his theory more clearly to raise the possibility of an ADA violation above the speculative level, if he can.

## CONCLUSION

In accordance with the foregoing, the court GRANTS the motion for judgment on the pleadings. LEAVE TO AMEND is also granted, as follows.

1. Judgment is granted as to the § 1983 claims based on the May 3, 2007, arrest as they are time-barred. Leave to amend is granted to plead an adequate basis to trigger equitable tolling.

---

[4] The ADA Amendments Act of 2008, Pub.L. 110-325, which took effect January 1, 2009, defined the term to include, among other things, "reading, concentrating, thinking, [and] communicating . . ." 42 U.S.C. 12102(2)(A).

2.	Judgment is granted as to the § 1983 claims against the Regents with prejudice. Leave to amend is granted to allege (a) a § 1983 claim for prospective injunctive relief against individual defendants in their official capacity, and/or (b) a § 1983 claim for damages against individual defendants in their individual capacities.

3.	Judgment is granted as to the ADA Title II claim for failure to state a claim. Leave to amend is granted so that Kemp might plead facts sufficient to support a claim. In particular, Kemp must allege facts showing that he suffers from an impairment that limits one or more major life activities, and that the Regents discriminated against him because of that disability.

4.	Any amended complaint must be filed no later than August 25, 2010. Amendments permitted are limited to those specified in this order.

**IT IS SO ORDERED**

Dated: July 22, 2010

PHYLLIS J. HAMILTON
United States District Judge